# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PAULA TAYLOR; WAYNE TAYLOR, )
                            )
                 Plaintiffs, )
                            )   Case No. 14-CV-207-JED-TLW
v.                          )
                            )
FARMERS INSURANCE COMPANY,   )
                            )
                 Defendant.  )

## OPINION AND ORDER

The facts of this case are straightforward and, in all material respects, undisputed.  The plaintiffs, Paula and Wayne Taylor, were involved in a motor vehicle accident with a third party, Charles Rogers, on January 10, 2009.  At the time of the accident, Mrs. Taylor was operating her 2001 Chevrolet Tahoe.  As of January 10, 2009, the Taylors had three automobile insurance policies issued by defendant Farmers Insurance Company (Farmers).  The Farmers automobile policies covered the 2001 Tahoe that was involved in the accident, as well as a 1999 Chevrolet Sierra and a 1999 Cutlass.

Mrs. Taylor reported the accident to Farmers on January 12, 2009, and Farmers agent Sheryka Alford was assigned with respect to the Taylors' possible policy benefits.  Two days later, Alford obtained the Oklahoma Uninsured Motorist Law forms for all three policies of insurance on the Taylors' automobiles.  For each of the three automobile policies, including the 2001 Tahoe, Mr. Taylor had previously executed the Oklahoma Uninsured Motorist Coverage Law form and plainly rejected uninsured motorist coverage: "I want to reject Uninsured Motorist coverage." (Doc. 22-6).  He dated the rejection form for the Chevy Tahoe insurance policy July 5, 2006.  (*See id.* at 1).  He executed rejections of uninsured motorist coverage on the other two

automobile policies as well, dating one January 5, 2006, while the other was not dated other than the preprinted "Effective Date" of October 30, 2006.

After receiving the uninsured motorist coverage forms on the three vehicles, Alford sent Mrs. Taylor a letter confirming that such coverage had been rejected on all three automobiles. (Doc. 10).  Alford enclosed copies of the rejection forms signed by Mr. Taylor, and Alford indicated that she was "closing the Uninsured Motorist section of this claim to inactive" because the "Uninsured Motorist coverage was waived on all the vehicles in the household."  (*See id.*).

The third party in the accident, Charles Rogers, was also insured by Farmers, and the Taylors' claims against him were settled for the policy limits of his liability coverage.  However, the Taylors' damages allegedly exceeded that coverage, which would entitle them to underinsured motorist benefits, *if they had such coverage under their Farmers automobile insurance policy*.  The Taylors assert that they believed they had such coverage as of the date of the accident, while Farmers provides evidence that the Taylors did not have, and had expressly rejected, any uninsured motorist coverage.

The only evidence cited by the Taylors in an attempt to create an issue of fact is a notice from Farmers, dated September 7, 2006, stating that uninsured motorist coverage was being added to the Tahoe policy effective July 21, 2006 because Farmers' "records indicate that the signed waiver form required by Farmers Insurance were [sic] not received."  (Doc. 23-1; Doc. 27-1).  However, Farmers has provided undisputed evidence that, on September 19, 2006 (just 12 days after the September 7, 2006 notice), Farmers notified the Taylors that the uninsured motorist coverage was *not* going to be included on the Tahoe policy effective July 21, 2006, as Farmers had apparently located the uninsured motorist form signed and dated July 5, 2006 by Mr. Taylor, on which he had *expressly rejected such coverage*.  (*See* Doc. 27-2 at 2 [noting no

uninsured motorist coverage]; *id.* at 4-5 [Declaration page reflecting "Not Covered" under "Uninsured Motorist"]; *see also* Doc. 22-14 at 1).

Despite Farmers' apparent, short-lived mistake or delay in receipt of the form rejecting uninsured motorist coverage, the Taylors have provided no evidence that they were ever actually charged or that they paid for any uninsured motorist coverage. The September 7, 2006 notice, upon which the Taylors hinge their entire argument, indicated that a premium change of $72.04 for the uninsured motorist change would be reflected on "future monthly statements." (Doc. 27-1 at 7). But the notice sent less than two weeks later, after Farmers recognized receipt of the Taylors' uninsured motorist coverage rejection form, reflected a corresponding credit and premium reduction for the $72.04. (Doc. 27-2 at 4). Every policy declaration page transmitted to the Taylors from September 19, 2006 through the accident in 2009 stated that the Taylors' Tahoe was "Not Covered" for "Uninsured Motorist" coverage. (*See* Doc. 22-14 at 1-6 [Declarations from September 2006 through January 21, 2009]).

There is simply no dispute that Mr. Taylor completed the form rejecting uninsured motorist coverage on the Tahoe on July 5, 2006; the Taylors have admitted that fact. (Doc. 23 at 3, ¶ 7). While they attempt to inject uncertainty based upon Farmers' notice of coverage change dated September 7, 2006, there is no dispute that (1) the Taylors rejected uninsured motorist coverage on July 5, 2006 for the coverage period July 21, 2006 to January 21, 2007; (2) Farmers recognized and/or received that rejection form by September 19, 2006, when it notified the Taylors that the Tahoe was *not covered* for uninsured motorist benefits; (3) every policy declaration from September 19, 2006 through the date of the accident evidenced that the Tahoe was "Not Covered" for uninsured motorist coverage; (4) while Farmers notified the Taylors of a premium change of $72.04 for uninsured motorist coverage on September 7, 2006, that change

was credited just 12 days later; and (5) the Taylors have provided no evidence that they ever paid for any uninsured motorist coverage on the Tahoe between 2006 and the date of the accident.[1]

Based on the foregoing, there is no genuine dispute as to any material fact, and Farmers is entitled to judgment as a matter of law, because the Taylors did not have uninsured motorist coverage on the Tahoe, or any other vehicle covered by Farmers, at the time of the accident.  The Taylors' claims are thus based entirely upon the denial of uninsured motorist benefits to which they were not entitled.  Farmers' motion for summary judgment (Doc. 22) is thus **granted**, pursuant to Fed. R. Civ. P. 56(a).  The Taylors included in their response to the summary judgment motion a general cross-motion for partial summary judgment.  For the same reasons set forth above, the Taylors' cross-motion (Doc. 24) is **denied**.   A separate Judgment will be entered forthwith.

SO ORDERED this 29th day of October, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[1]      Although the Taylors cite *Okla. Stat.* tit. 36, § 3636 in support of their argument, the specific provisions of that statute actually support Farmers' position.  At the time of the accident, subsection G of § 3636 provided that a "named insured or applicant shall have the right to reject uninsured motorist coverage in writing and ... unless a named insured or applicant requests such coverage in writing, such coverage need not be provided in or supplemental to any renewal, reinstatement, substitute, amended or replacement policy where a named insured or applicant had rejected the coverage...."  *Okla. Stat.* tit. 36, § 3636(G) (eff. Nov. 1, 2004).  Subsection H at the time also made it clear that a rejection of uninsured motorist coverage by a named insured or applicant "shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance."  *Id.*, § 3636(H).  The current version of the statute is consistent with the version effective at the time of the accident, and those provisions are now set forth in subsection G of § 3636.  *Okla. Stat.* tit. 36, § 3636(G) (eff. Nov. 1, 2014).  The Taylors do not claim, and the record does not support any contention, that they provided Farmers a request, in writing, that uninsured motorist coverage be added, at any time after Mr. Taylor completed the written form rejecting that coverage.  Accordingly, under § 3636, that rejection remained valid as to all insureds under the policy covering the 2001 Tahoe.